**Randy L. GILMORE, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, SOS Staffing Services, Inc., and Insurance Company of the State of Pennsylvania, Respondents.**

No. 07CA0589.

Colorado Court of Appeals, Div. V.

May 15, 2008.

As Modified on Denial of Rehearing June 12, 2008.

Certiorari Denied Oct. 6, 2008.

Cristiano Law, LLC, Francis V. Cristiano, Greenwood Village, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Clifton, Mueller & Bovarnick, P.C., Richard A. Bovarnick, Denver, Colorado, for Respondents, SOS Staffing Services, Inc. and Insurance Company of the State of Pennsylvania.

Opinion by Judge GRAHAM.

In this workers' compensation action, claimant, Randy L. Gilmore, seeks review of a final order issued by the Industrial Claim Appeals Office (Panel) affirming the order of the administrative law judge (ALJ). The ALJ found that claimant was responsible for the termination of his employment and denied his request for continuing temporary total disability (TTD) benefits. We affirm.

Claimant sustained an admitted, work-related injury in August 2005 while working as a carpenter for SOS Staffing Services, Inc. (employer), a company that provides temporary employees to client employers. He was released to modified employment by his authorized treating physician approximately one month after his accident. However, claimant did not return to work for employer, because he had been terminated from his employment shortly after the accident for violating employer's drug policy.

On the day of the accident, pursuant to employer's policy, claimant consented in writing to drug screening. The consent form advised claimant that employer had "a drug-free workplace program and will not employ individuals ... who test positive for drug use." This advisement was also included on the employment application form claimant should have completed before he began working for employer and which was periodically renewed. Although claimant at first admitted he knew he would be terminated if he tested positive, he later claimed that he was not told he would be terminated if he failed a drug screening.

Claimant's drug test was positive for cannabis. Because of the positive test result, claimant's employment was terminated. He later admitted that four days prior to the accident, while on the construction job site he had smoked marijuana provided to him and his co-workers by the on-site supervisor, who was an employee of the client employer.

Employer subsequently declined to provide claimant with TTD benefits after the date of his termination because he had been terminated for cause. Claimant then sought a hearing on the issue of continuation of TTD benefits.

After conducting a hearing, the ALJ concluded that employer had established that claimant was responsible for his termination. The ALJ found the testimony of employer's staffing manager credible, and further found that claimant knew or reasonably should have known that a positive drug test would result in the termination of his employment. Claimant petitioned for review, but the Panel affirmed the ALJ, finding that substantial evidence supported the ALJ's determination. This appeal followed.

## I.

■ Claimant first argues that the ALJ and the Panel misapplied the law because, he contends, employer's failure to offer him modified employment barred the ALJ from denying him continuing TTD benefits. We disagree.

■ The Workers' Compensation Act (Act) prohibits a claimant from receiving temporary disability benefits if the claimant is responsible for the termination of the employment relationship. "In cases where it is determined that a temporarily disabled employee is responsible for termination of employment, the resulting wage loss shall not be attributable to the on-the-job injury." §§ 8–42–103(1)(g), 8–42–105(4), C.R.S.2007.

Claimant argues that under a doctrine established by *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323 (Colo.2004), and *Grisbaum v. Industrial Claim Appeals Office,* 109 P.3d 1054 (Colo.App.2005), his temporary disability benefits could not be discontinued unless and until he had been offered modified employment. We disagree with claimant's interpretation of the rule set forth by these cases, and conclude that *Anderson* and *Grisbaum* are factually and legally distinguishable from the facts of this case.

In *Anderson,* two claimants challenged the ruling of a division of this court which held that the termination statutes in the Act barred the claimants, whose employment had been voluntarily or involuntarily terminated, from obtaining disability benefits when their conditions worsened. The claimants' worsening conditions caused them to stop working for subsequent employers. They argued that it was the worsening condition and not their prior separation of employment that had resulted in their wage loss. The Colorado Supreme Court agreed, holding that "section 8–42–105(4) bars TTD wage loss claims when the voluntary or for-cause termination of the modified employment causes the wage loss, but not when the worsening of a prior work-related injury incurred during that employment causes the wage loss." *Anderson,* 102

P.3d at 326. Thus, *Anderson* is limited to those situations in which a claimant's condition worsens after the termination of employment and prevents or diminishes the claimant's ability to work.

Similarly, *Grisbaum* held that a claimant's worsening condition warranted the award of temporary disability benefits even though the claimant had previously voluntarily resigned his position. As in *Anderson*, the critical factor supporting the award of TTD benefits was the claimant's worsening condition, which restricted or prevented claimant's ability to work for future employers, not whether that claimant had been offered modified employment prior to the termination of employment. Citing *Anderson*, *Grisbaum* noted that "the termination statutes bar temporary disability wage loss claims only when the voluntary or for-cause termination of the modified employment causes the wage loss, but not when the worsening of a prior work-related injury incurred during that employment causes the wage loss." *Grisbaum*, 109 P.3d at 1056.

Here, in contrast, claimant makes no claim that his condition worsened and prevented him from working. Indeed, the record reflects the contrary. Claimant's condition improved and he was released to return to work with some restrictions. He is unable to work for employer because he violated employer's "no tolerance" policy prohibiting the ingestion or use of illicit drugs. Unlike the claimants in *Anderson* and *Grisbaum*, he does not have medical restrictions that prevent him from working for other employers. This case is, thus, factually distinguishable from *Anderson* and *Grisbaum*.

The ALJ awarded claimant TTD benefits for the period of time he was unable to work because of his injuries. Once claimant was released to modified work, the ALJ ordered that the disability benefits ceased. Had claimant not precipitated his termination by engaging in activities that violated employer's no-tolerance drug policy, he could have been offered modified work by employer. The fact that he was not offered modified employment because he had been terminated has no bearing on the critical fact that he was physically able to work. We therefore conclude that the ALJ properly applied the law when he discontinued claimant's TTD benefits.

II.

■ Claimant next contends that substantial evidence did not support the ALJ's conclusion that his termination was for cause. Again, we disagree.

■ As noted above, a claimant found to be responsible for his or her own termination is barred from recovering temporary disability benefits under the Act. §§ 8–42–103(1)(g), 8–42–105(4); *cf.* *Padilla v. Digital Equip. Corp.*, 902 P.2d 414, 416 (Colo.App.1994) ("if the record shows a claimant's voluntary conduct caused his termination and the injury plays no part in the discharge, then the record will not support a finding of compensable injury"). Whether an employee is at fault for causing a separation of employment is a factual issue for determination by the ALJ. *Padilla*, 902 P.2d at 416. A finding of fault requires a volitional act or the exercise of a degree of control by a claimant over the circumstances leading to the termination. *Id.*

■ Under the termination statutes, sections 8–42–103(1)(g) and 8–42–105(4), an employer bears the burden of establishing by a preponderance of the evidence that a claimant was terminated for cause or was responsible for the separation from employment. *Cf. City & County of Denver v. Indus. Claim Appeals Office*, 58 P.3d 1162, 1164–65 (Colo. App.2002) (the employer bears the burden of establishing its entitlement to an overpayment); *Cowin & Co. v. Medina*, 860 P.2d 535, 538 (Colo.App.1992) ("[g]enerally, the party relying upon a statutory exception has the burden of establishing the factual predicate for its application"). The termination statutes cannot be applied to cease payment of TTD benefits unless and until the ALJ makes a factual determination that a claimant was responsible for the termination of employment. *See Padilla*, 902 P.2d at 416.

■ In reviewing an ALJ's factual determinations, a court must view the evidence in the light most favorable to the prevailing

party. *Metro Moving & Storage Co. v. Gussert,* 914 P.2d 411, 415 (Colo.App.1995). The reviewing court is bound by the ALJ's factual determinations even if the evidence was conflicting and could have supported a contrary result. *Pacesetter Corp. v. Collett,* 33 P.3d 1230, 1234 (Colo.App.2001); *Metro Moving & Storage,* 914 P.2d at 415 (reviewing court must defer to the ALJ's credibility determinations and resolution of conflicts in the evidence and may not substitute its judgment for that of the ALJ). Further, the reviewing court must uphold the factual determinations of the ALJ if the decision is supported by substantial evidence in the record. § 8–43–308, C.R.S.2007; *Christie v. Coors Transp. Co.,* 919 P.2d 857, 860 (Colo.App.1995), *aff'd,* 933 P.2d 1330 (Colo.1997). The scope of our review is, thus, "exceedingly narrow." *Metro Moving & Storage,* 914 P.2d at 415.

Here, the record supports the ALJ's determination that claimant was responsible for his termination. Claimant suggests that "[t]he consumption of cannisbis was the result of his supervisor supplying such, encouraging its consumption" and that even though the supervisor was an independent contractor, "it was certainly within the claimant's instructions that he was to follow the guidance of any on-site supervisor." He contends that because employer instructed him to follow the on-site supervisor's guidance, his participation in the illegal act of smoking marijuana was a sanctioned activity, despite the express language of employer's policy prohibiting the use of drugs. We are not persuaded.

Claimant accepted and smoked the cannabis of his own volition. Although the cannabis was offered and supplied to claimant by the on-site supervisor, he did not have to accept it. Nothing in the record suggests claimant was forced to accept and smoke the drug. Moreover, no employee is ever required to follow instructions that so clearly violate the law. *See, e.g., Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 109 (Colo.1992) (recognizing claim of wrongful discharge in violation of public policy by employee who demonstrates termination was based on the employee's refusal to participate in the illegal act).

Further, the ALJ found, with record support, that it is more probable than not that claimant was provided with and signed the application which set forth employer's drug policy and was aware of the policy. The on-site supervisor was not subject to this policy. We therefore agree with the ALJ and the Panel that claimant should have known his actions would result in his termination.

Because we find that substantial evidence supports the ALJ's determination that claimant was responsible for his termination, we must uphold it. *See Christie,* 919 P.2d at 860.

The order is affirmed.

Judge ROY and Judge STERNBERG * concur.