2014 COA 25

**APEX TRANSPORTATION, INC.; and
Pinnacol Assurance, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS OF-
FICE of the State of Colorado; and
Paul R. Vigil, Respondents.**

**Court of Appeals No. 13CA0016**

Colorado Court of Appeals,
Div. VI.

Announced March 13, 2014

Industrial Claim Appeals Office of the State of Colorado, WC No. 4–850–101

Harvey D. Flewelling, Denver, Colorado, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

The Frickey Law Firm, Adam McClure, Lakewood, Colorado, for Respondent Paul R. Vigil

Lichtenstein and Gabriel, JJ., concur

Opinion by JUDGE HAWTHORNE

¶ 1 In this workers' compensation action, employer, Apex Transportation, Inc., and its insurer, Pinnacol Assurance, seek review of a final order of the Industrial Claim Appeals Office (Panel) reversing an administrative law judge's (ALJ) order denying claimant, Paul R. Vigil, temporary total disability (TTD) benefits. We set aside the Panel's final order and remand the case with directions to reinstate the ALJ's original order.

I.  Factual and Procedural History

¶ 2 Claimant worked as a truck driver for Apex for five and a half years. In February 2011, claimant sustained an injury to his shoulder. He refused medical attention at the time because it was "Apex's busiest season" and he "thought the pain would go away." When the pain did not subside, claimant obtained a "pain pill" from his brother.

¶ 3 He did not take the pill immediately. About a week later, though, the pain became "excruciating," and claimant took the pain pill. The next day at work, the pain returned, and claimant decided to formally report the injury to employer. He was sent to employer's workers' compensation health care provider to be examined and treated. The physician's assistant (PA) who examined him imposed no work restrictions and determined that claimant could return to work.

¶ 4 Under employer's policies, any employee who sustains a work-related injury must submit to a drug test when initially examined. Claimant therefore underwent a drug screen. The test proved positive for morphine—the pain pill claimant received from his brother—although claimant had no prescription for the medication. Because employer has a "no tolerance" policy for drugs, claimant was immediately terminated.

¶ 5 Several days after being terminated, claimant returned to the medical clinic and was seen by a physician. Although the physician found claimant had not suffered a permanent impairment, he noted that claimant sustained a "severe spasm of the whole girdle," prescribed pain medication, and ordered claimant "off work."

¶ 6 Claimant then sought TTD benefits. After a hearing, the ALJ found that claimant's termination from employment was volitional. He further found that claimant had failed to establish that his condition had worsened after he was terminated. The ALJ therefore denied claimant's request for TTD benefits in his November 3, 2011, Findings of Fact, Conclusions of Law, and Order (the ALJ's original order).

¶ 7 On review, the Panel disagreed, concluding that the ALJ's factual findings failed to support the conclusion that claimant's condition had not worsened after he was terminated. The Panel instead found that because the physician had taken claimant off work nearly two weeks after the PA had not imposed any work restrictions, claimant's condition had necessarily worsened. The Panel concluded that because the physician's work restrictions were imposed post-termination, the work restrictions, not the termination, caused claimant's wage loss, entitling him to TTD benefits. The Panel consequently remanded the case for TTD benefits to be awarded. The ALJ complied, and, in its August 17, 2012, final order, the Panel affirmed the ALJ's order on remand awarding claimant benefits. Employer now appeals.

II.  Analysis

¶ 8 Initially, we note that claimant's answer brief fails to comply fully with the applicable appellate rules. The brief appears

to have been prepared in twelve-point type-face, rather than the fourteen-point typeface mandated by C.A.R. 32(a)(1). Also, it does not include page numbering, despite the rule's mandate that page numbers "shall be required." *See* C.A.R. 32(b)(2). Despite these deficiencies, we take no action at this time and accept claimant's brief as filed. However, claimant's counsel is reminded that future deviations from the appellate rules' requirements may result in sanctions.

¶ 9 Employer contends that the Panel exceeded its authority when it set aside the ALJ's original order denying claimant's request for TTD benefits. It argues that substantial record evidence supported the ALJ's factual finding that claimant's termination was volitional and that his condition had not worsened after he was terminated. By setting aside the ALJ's findings, employer contends, the Panel reweighed the evidence and engaged in improper fact-finding. We agree.

¶ 10 Under the termination statutes, an employee responsible for being separated from employment may be denied TTD. The statutes, which recite identical language, provide: "In cases where it is determined that a temporarily disabled employee is responsible for termination of employment, the resulting wage loss shall not be attributable to the on-the-job injury." §§ 8–42–103(1)(g), 8–42–105(4)(a), C.R.S.2013.

¶ 11 But an injured worker may be entitled to a reinstatement or continuation of TTD benefits after being terminated if it is determined that the ensuing wage loss is attributable to a worsened condition causally related to the work injury and not to the termination. *See Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 326 (Colo.2004) ("We hold that section 8–42–105(4) bars TTD wage loss claims when the voluntary or for-cause termination of the modified employment causes the wage loss, but not when the worsening of a prior work-related injury incurred during that employment causes the wage loss.").

¶ 12 Whether an injured worker "is at fault for causing a separation of employment is a factual issue for determination by the ALJ.... A finding of fault requires a

volitional act or the exercise of a degree of control by a claimant over the circumstances leading to the termination." *Gilmore v. Indus. Claim Appeals Office,* 187 P.3d 1129, 1132 (Colo.App.2008).

¶ 13 Whether a worsened condition caused claimant's wage loss is also a factual question to be determined by the ALJ. *See Cordova v. Indus. Claim Appeals Office,* 55 P.3d 186, 191 (Colo.App.2002) ("The weight to be assigned ... evidence [of a worsening condition] was a matter for the ALJ, and inasmuch as there is substantial evidence to support the denial of the petition to reopen, we may not substitute our judgment for that of the ALJ on that issue.").

¶ 14 Here, the ALJ initially determined that claimant's volitional act of ingesting the pain pill caused his termination, and that his condition had not worsened after his termination. The ALJ specifically found that

- claimant's "right shoulder had been painful when he obtained a pain pill from his brother";

- both the PA and the physician diagnosed claimant as suffering from a "sprain/strain of the right scapula";

- although the physician increased claimant's work restrictions, claimant had "not demonstrated that his right shoulder condition worsened"; and

- the physician neither anticipated that claimant had suffered a permanent impairment nor documented that claimant's condition had worsened.

¶ 15 In rejecting the ALJ's findings, the Panel observed that "the ALJ's findings that the PA returned the claimant to full duty after his industrial injury and [that the physician] subsequently took the claimant off work ... demonstrates that the claimant's worsening of condition reestablished the causal connection between the injury and the wage loss." The Panel held that because, after claimant was terminated, the physician reversed the PA's determination that claimant could work, the work restrictions thus "demonstrate[d] that the claimant's worsening of condition reestablished the causal connection between the injury and the wage loss."

¶ 16 We know of no case that has held that an increase in work restrictions is per se evidence of a worsening condition. To the contrary, the Panel itself has previously held that an ALJ may look at several factors when considering whether a condition had worsened to the extent that the worsened condition, and not an intervening termination of employment, caused the claimant's wage loss. *See, e.g. Enciso v. C.F. Meier Composites, Inc.*, 2009 WL 2520525 (W.C. No. 4–764–288, Aug. 12, 2009) (rejecting the claimant's contention that he had necessarily suffered a worsened condition and was entitled to TTD reinstatement solely because of his increased work restrictions); *Hammack v. Falcon Sch. Dist. No. 49*, 2006 WL 3146358, *2 (W.C. No. 4–637–865, Oct. 23, 2006) (rejecting the claimant's propositions that a "mere showing of additional restrictions was sufficient" to show a causal connection between her injury and her wage loss and that there is no requirement to show an actual worsening of condition to obtain post-termination TTD), *aff'd Hammack v. Indus. Claim Appeals Office*, (Colo.App. No. 06CA2344, 2007 WL 4260343, Dec. 6, 2007) (not published pursuant to C.A.R. 35(f)). Increased restrictions alone do not necessarily establish a worsened condition. *See Heinicke v. Indus. Claim Appeals Office*, 197 P.3d 220, 222 (Colo.App. 2008) ("[A]n ALJ is not required to reopen a claim based upon a worsened condition whenever an ATP [authorized treating physician] finds increased impairment following MMI [maximum medical improvement].").

¶ 17 Although the evidence could support the Panel's conclusion, we agree with employer that the Panel exceeded its authority by reweighing the evidence. As noted above, these factual determinations fall squarely within the ALJ's province. *See Gilmore*, 187 P.3d at 1132; *Cordova*, 55 P.3d at 191.

¶ 18 To reach its conclusion, the Panel overlooked other findings made by the ALJ—particularly the ALJ's observation that the medical records did not reflect an increase in claimant's pain levels and that claimant's "right shoulder had been painful when he obtained a pain pill from his brother." Record evidence supports the ALJ's findings that

- claimant described his pain level when he took his brother's pain pill as "excruciating";
- before he took the pain pill, and thus before he was terminated, the pain "kept gradually getting worse" until he "couldn't take it anymore" and swallowed the pill;
- the pain returned to the same level the day after he took the pain pill;
- when asked by the PA, claimant denied having difficulty using his shoulder or experiencing significant discomfort, but he testified that he was actually "in pain" when he saw the PA;
- both the PA and the physician diagnosed a right scapula sprain/strain; and
- claimant told the physician that the pain was "not that bad at first," but later it worsened and was only eased by taking the pain pill.

¶ 19 We therefore conclude that substantial evidence supported the ALJ's factual findings that claimant had not suffered a worsened condition and that his for-cause termination led to his wage loss. *See Gilmore*, 187 P.3d at 1132; *Cordova*, 55 P.3d at 191. Accordingly, the Panel exceeded its authority when it set aside the ALJ's original order denying claimant's request for TTD benefits. *See* § 8–43–301(8), C.R.S.2013.

¶ 20 The Panel's final order is set aside and the case is remanded with directions to reinstate the ALJ's original order.

JUDGE LICHTENSTEIN and JUDGE GABRIEL concur.