25CA1243 Alvarez-Velasquez v ICAO 03-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1243
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-271-197

---

Jesus Alvarez-Velasquez,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and SMH West, LLC/SM Hentges and Sons, Inc.,

Respondents,

and

Western National Assurance Company c/o Umialik Insurance,

Insurer-Respondent.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Harris and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

---

Amber Sliger, Colorado Springs, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Hall & Evans L.L.C., Douglas J. Kotarek, Matthew J. Hegarty, Aaron Helmberger, Denver, Colorado, for Respondent SMH West, LLC/SM Hentges and Sons, Inc., and Insurer-Respondent Western National Assurance Company

c/o Umialik Insurance

¶ 1     Jesus Alvarez-Velasquez appeals an order of the Industrial Claim Appeals Office (Panel) affirming the denial and dismissal of his workers' compensation claim because he failed to establish a compensable work injury.  We affirm the Panel's order.

## I.     Background

¶ 2     In April 2024, Velasquez worked for SMH West, LLC/SM Hentges and Sons, Inc. (Employer) as a top man on a construction site.  On April 17, Velasquez reported to the foreman that an excavator bucket hit him while he was working.

¶ 3     Velasquez did not seek immediate medical attention.  The next day, however, Velasquez went to the hospital, complaining of neck and back pain.  Imaging scans were "unremarkable for significant traumatic pathology" and showed "no acute fractures or other injuries."  Velasquez was treated with pain-relieving medications and released.

¶ 4     Velasquez followed up about a week later with his primary care provider, Dr. Backlas, who excused him from work due to reported back and neck pain.  Velasquez continued treatment with Dr. Backlas and engaged in physical therapy and chiropractic treatments.

¶ 5　　Velasquez filed a workers' compensation claim and requested a hearing.  Employer and its insurance carrier, Western National Insurance (collectively, Respondents), contested compensability and requested an independent medical examination (IME).

¶ 6　　Dr. Marc Steinmetz conducted the IME.  In his report, Dr. Steinmetz preliminarily concluded that the exam was "*inconsistent with any likely valid physical injury*," but he reserved his final opinion until he received and reviewed additional medical records.  After reviewing the additional records, Dr. Steinmetz supplemented his report and concluded that the medical records confirmed his original impression that Velasquez did not suffer an "actual likely injury from his activities at work."

¶ 7　　As allowed by statute, Velasquez arranged to have Dr. Sander Orent present to observe the IME.  Dr. Orent did not attend the IME in person but observed it virtually through Velasquez's phone.  Dr. Orent did not independently examine Velasquez.

¶ 8　　At the hearing, Velasquez was represented by counsel.  He testified to his version of events — that he was hit by the excavator bucket and then sought medical treatments for his resulting neck and back pain.  He testified that several people witnessed the

2

incident, but he neither subpoenaed nor presented any of the alleged witnesses.

¶ 9     The construction foreman — Velasquez's brother-in-law — generally corroborated that Velasquez reported the incident but admitted that he wasn't present at the time and didn't witness it. The construction manager also testified that after he learned about the reported injury, he went to the work site to investigate. He testified that he spoke to "six or seven people on the crew" at the time of the alleged incident and "[e]veryone else on the crew . . . didn't see anything."

¶ 10    Dr. Steinmetz testified to his conclusion that Velasquez was "inconsistent" and "unreliable" and did not suffer a work injury. Dr. Orent testified to perceived deficiencies in Dr. Steinmetz's IME but offered no opinion about Velasquez's medical condition or whether he suffered a work injury.

¶ 11    After the hearing, an administrative law judge (ALJ) issued an order denying and dismissing the claim, finding that (1) Velasquez and the construction foreman were "not credible"; (2) Dr. Steinmetz "credibly opined that [Velasquez] sustained no injury"; and (3) Velasquez "failed to establish a compensable" work injury.

3

¶ 12    Velasquez appealed the order and the Panel affirmed.

## II.    Analysis

¶ 13    Velasquez appeals the Panel's order affirming the ALJ's finding that he did not suffer a compensable work injury.  He raises multiple challenges to the ALJ's findings.  We are not persuaded.

### A.    Standard of Review and Legal Principles

¶ 14    Our scope of review is narrow.  *See Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 415 (Colo. App. 1995).  As relevant here, we may set aside the order only if "the findings of fact are not supported by the evidence" or the "denial of benefits is not supported by applicable law."  § 8-43-308, C.R.S. 2025.  Substantial evidence is "probative, credible, and competent, such that it warrants a reasonable belief in the existence of a particular fact without regard to contradictory testimony or inference."  *Life Care Ctrs. of Am. v. Indus. Claim Appeals Off.*, 2024 COA 47, ¶ 14.  Assessing the weight, credibility, and sufficiency of such evidence is the ALJ's exclusive domain, and findings based on conflicting evidence are conclusive on review.  *Delta Drywall v. Indus. Claim Appeals Off.*, 868 P.2d 1155, 1157 (Colo. App. 1993).  Thus, we are "bound by the ALJ's factual determinations even if the evidence was

conflicting and could have supported a contrary result." *Gilmore v. Indus. Claim Appeals Off.*, 187 P.3d 1129, 1133 (Colo. App. 2008).

¶ 15    The Workers' Compensation Act of Colorado compensates employees for injuries arising out of and in the course of employment. § 8-41-301(1)(c), C.R.S. 2025. The claimant, however, has the burden of proof to establish the occurrence of a compensable injury. *Town of Kiowa v. Indus. Claim Appeals Off.*, 2024 COA 36, ¶ 46; *see also Faulkner v. Indus. Claim Appeals Off.*, 12 P.3d 844, 846 (Colo. App. 2000) (claimant has the burden to establish causation before any compensation is awarded). Whether a claimant has met this burden of proof is a question of fact for the ALJ. *Cabela v. Indus. Claim Appeals Off.*, 198 P.3d 1277, 1280 (Colo. App. 2008).

B.    Substantial Evidence Supports the ALJ's Findings

¶ 16    Though Velasquez raises several discrete challenges to the ALJ's findings, threaded throughout all of them is his belief that his work injury was "undisputed" and "unrefuted" and that he therefore satisfied his prima facie burden. We disagree.

¶ 17    While Velasquez testified to his version of events, the ALJ heard evidence that inferentially challenged Velasquez's account.

For instance, though Velasquez and the foreman claimed several people witnessed his injury, Velasquez did not subpoena or present any of the alleged witnesses. *See* Dep't of Pers. & Admin. Rule 18, 1 Code Colo. Regs. 104-3 (allowing either party to subpoena a witness in a workers' compensation action). The one witness Velasquez presented to corroborate his account, the foreman, admittedly was not a witness to the event. Beyond that, the construction manager testified that he specifically spoke with "six or seven" crew members present the day of the reported injury and none of them saw anything. To the extent Velasquez claims the ALJ was *required* to credit his testimony (even if the ALJ found it incredible), that's not correct. Indeed, a fact finder is not required to rely on testimony even if it is uncontroverted, *Levy v. Everson Plumbing Co.*, 468 P.2d 34, 35 (Colo. 1970), and the ALJ has discretion to credit or reject all or part of a witness's testimony, *El Paso Cnty. Dep't of Soc. Servs. v. Donn*, 865 P.2d 877, 881 (Colo. App. 1993); *accord Kim v. Grover C. Coors Tr.*, 179 P.3d 86, 96-97 (Colo. App. 2007).

¶ 18      And while Velasquez maintains that his medical records somehow presumptively established his work injury, we disagree. The admitted medical records reflect nothing more than Velasquez's

6

reported account of the injury (though they do not reflect entirely consistent accounts), which the ALJ found "not credible." The records do not, as Velasquez asserts, independently corroborate and "confirm [Velasquez] was injured at work while doing his job." And contrary to Velasquez's insistence, medical records — while statutorily admissible — are not "presumptively reliable." *See* § 8-43-210, C.R.S. 2025. Evidence isn't reliable simply because it is admissible. *See People in Interest of J.E.B.*, 854 P.2d 1372, 1376 (Colo. App. 1993) ("[I]ssues of credibility or reliability go to the weight of the evidence, not its admissibility."). It is again for the ALJ to consider and weigh the evidentiary value of all the admitted evidence. *See Delta Drywall*, 868 P.2d at 1157.

¶ 19    But even assuming the records had some independent evidentiary value, Respondents challenged the injury as reported in the medical reports through the testimony of Dr. Steinmetz. Dr. Steinmetz concluded that Velasquez's reported work injury was inconsistent with his history, physical exam, and medical records. Though Velasquez takes issue with Dr. Steinmetz's opinion, he did not present a contrary medical opinion. At most, he presented a witness — Dr. Orent — who criticized how Dr. Steinmetz conducted

7

the IME.  But Dr. Orent did not examine Velasquez and offered no opinion on Velasquez's purported injury.  After considering the evidence presented, the ALJ credited Dr. Steinmetz.  *See City of Littleton v. Indus. Claim Appeals Off.*, 2016 CO 25, ¶ 51 ("The ALJ has discretion to determine the weight to be accorded an expert medical opinion."); *H & H Warehouse v. Vicory*, 805 P.2d 1167, 1170 (Colo. App. 1990) ("The ALJ has great discretion in determining the facts and deciding ultimate medical issues.").

¶ 20    To the extent Velasquez contends that the ALJ erred by failing to specifically address individual medical records, Dr. Orent's testimony, or other evidence or testimony that Velasquez believes favors his position, we disagree.  An "ALJ is required to make specific findings only as to the evidence [the ALJ] found persuasive and determinative."  *Gen. Cable Co. v. Indus. Claim Appeals Off.*, 878 P.2d 118, 120-21 (Colo. App. 1994).  An ALJ has no obligation to address every issue raised or evidence that the ALJ finds unpersuasive.  *Id.*  Nor are we aware of any requirement that an ALJ must review and discuss the testimony of every testifying witness.

¶ 21    All that said, we recognize that different evidentiary inferences could be drawn from the evidence.  But the ALJ explicitly found that Velasquez and the foreman were not credible — a finding that Velasquez largely fails to acknowledge and that distinguishes this case from *Gates v. Central City Opera House Ass'n*, 108 P.2d 880 (Colo. 1940).  The ALJ instead credited the construction manager's testimony that no crew members reported seeing the accident, Dr. Steinmetz's conclusion that Velasquez did not suffer a work injury, and other inconsistencies in Velasquez's version of events.  These findings are uniquely within the ALJ's purview, and we may not reweigh the evidence or second-guess the ALJ's credibility findings. *Hoskins v. Indus. Claim Appeals Off.*, 2014 COA 47, ¶ 10.

¶ 22    In short, viewing "the evidence as a whole and in the light most favorable to the prevailing party," and "deferring to the ALJ's credibility determinations and resolution of conflicting evidence," we conclude that the ALJ's findings are supported by substantial evidence.  *Benuishis v. Indus. Claim Appeals Off.*, 195 P.3d 1142, 1145 (Colo. App. 2008).

9

## C. Right to a "Chaperone"

¶ 23    We next consider Velasquez's claim that his statutory right to have Dr. Orent "chaperone" the IME "was violated." We disagree.

¶ 24    An employee is entitled to have a physician, provided and paid for by the employee, present during an IME. § 8-43-404(2)(a), C.R.S. 2025.[1]

¶ 25    It's undisputed that Dr. Orent was virtually *present* and observed the IME. Indeed, Dr. Orent testified that he was present during the IME and opined that the IME was deficient. That's all the statute requires. *See id.* While Dr. Orent did not observe Velasquez before or after the IME — and Dr. Steinmetz did — Velasquez doesn't direct us to any authority that requires the observing physician to view the patient before or after the IME. While Dr. Orent could have attended the IME in person and perhaps observed Velasquez before and after, he attended virtually. And it was Velasquez who initiated the virtual contact and chose to do so only when he entered the exam room. This hardly constitutes

---

[1] Although the parties refer to the statutory right to a "chaperone" during the IME, the statute does not use that term. *See* § 8-43-404(2)(a), C.R.S. 2025.

10

Dr. Steinmetz "effectively refus[ing] [Velasquez's] right to have a physician present for the examination."

¶ 26    Velasquez's real complaint seems to be that Dr. Steinmetz considered Velasquez's physical abilities and movement before the IME, in addition to examining Velasquez and reviewing medical records, in forming his opinion that Velasquez did not suffer a work injury.  But that argument goes to the weight of his testimony.  *See City of Littleton*, ¶ 51.  And having heard from Dr. Orent and Dr. Steinmetz, the ALJ specifically found that Dr. Steinmetz "credibly opined that [Velasquez] sustained no injury."  We may not second-guess that determination.  *See Hoskins*, ¶ 10.

### D.    Unavailability of Witnesses

¶ 27    As we understand it, Velasquez contends that a prehearing ruling that allowed Respondents to withhold the home addresses of its employees prevented him from calling witnesses "who were at the scene and saw the incident."

¶ 28    But Velasquez doesn't explain how the ruling *prevented* him from presenting any corroborating witnesses.  After all, Velasquez identified the witnesses he claimed could support his version of events and had the right to subpoena those witnesses.  *See* Dep't of

11

Pers. & Admin. Rule 18, 1 Code Colo. Regs. 104-3.  We see nothing in the record that suggests Velasquez attempted to subpoena any witness but was somehow prevented from doing so.

¶ 29     To the extent that Velasquez claims that the ALJ erred by failing to consider the "unavailability of Respondent's witnesses," again, nothing shows any witness was "unavailable."  The ALJ credited the construction manager's testimony that "no one present [was] able [to] confirm the incident occurred" and found "the contrary insistence of [Velasquez] to be not credible."  We are bound by that determination.

### E.     Exclusion of the Claim File

¶ 30     The Panel agreed with Velasquez on one point.  Specifically, it concluded that the ALJ improperly excluded the claim file because it was the Respondents' record, but that the exclusion was harmless.  Velasquez argues that the error wasn't harmless because the file "held admissions that tended to corroborate [his] testimony."[2]

---

[2] Respondents now argue that the Panel erred by ruling that the ALJ should have admitted the claim file, but they failed to file a conditional cross-appeal of the order.

¶ 31     We agree with the Panel, however, that the claim file merely showed that Velasquez made a workers' compensation claim based on the alleged incident and that the claim was under investigation. Contrary to Velasquez's assertion, the claim file does not contain "admissions uniquely probative of liability." Among other things, the claim file states that "[t]here was an alleged incident where [Velasquez] was struck by a piece of equipment" and "there were no witnesses to the injury." Beyond these neutral statements, the information in the claim file was largely cumulative of other properly admitted evidence. Because nothing in the claim file corroborated Velasquez's claim and it was cumulative of other evidence, the exclusion of the claim file was harmless. *See* § 8-43-310, C.R.S. 2025 ("[T]he court shall disregard any irregularity or error . . . unless it affirmatively appears that the party complaining was damaged thereby.").

## F.     Appellate Attorney Fees

¶ 32     Having concluded that substantial evidence supports the ALJ's finding, we disagree with Velasquez that Respondents' "defense is frivolous." We therefore deny his request for an award of appellate attorney fees "[p]ursuant to C.A.R. 39(a)."

13

### III. Disposition

¶ 33     The order is affirmed.

JUDGE HARRIS and JUDGE MOULTRIE concur.