Page 411
914 P.2d 411
METRO MOVING & STORAGE CO. and Colorado Compensation
Insurance Authority, Petitioners,
v.
Gary A. GUSSERT and the Industrial Claim Appeals Office of
the State of Colorado, Respondents.
No. 94CA1926.
Colorado Court of Appeals,
Div. I.
June 15, 1995.
Rehearing Denied Aug. 3, 1995.
Certiorari Denied April 15, 1996.

        Michael J. Steiner, Denver, for petitioners.
        Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Pepe J. Mendez & Associates, P.C., Pepe J. Mendez, Denver, for respondent Gary A. Gussert.
        No appearance for the Industrial Claim Appeals Office.
        Chief Judge STERNBERG.
        The petitioners, Metro Moving & Storage Co. and Colorado Compensation Insurance Authority, seek review of a final order of the Industrial Claim Appeals Panel, which determined that Gary A. Gussert, claimant, presented clear and convincing evidence to overcome the rating of the independent medical examination (IME) physician in determining his medical impairment benefits. We affirm.
        It was conceded that the claimant, a furniture mover, suffered a work-related injury to his back. The sole issue in controversy is the extent of his permanent impairment under the new standards adopted by the General Assembly during the 1991 revision of the Workers' Compensation Act.
I. Legislative History
        Prior to the 1991 statutory changes, the Administrative Law Judge (ALJ) had broad discretion in assessing the extent and degree of an injured worker's permanent disability. See American Metals Climax, Inc. v. Cisneros, 195 Colo. 163, 576 P.2d 553 (1978); Ski Depot Rentals, Inc. v. Lynch, 714 P.2d 516 (Colo.App.1985).
        However, in the 1991 legislative session, the General Assembly repealed the statute governing benefits for permanent partial disability 

Page 413
and replaced it with provisions for benefits now termed "permanent medical impairment." See Colo.Sess.Laws 1991, ch. 219, § 8-42-107 at 1306. For all non-scheduled injuries, permanent impairment must now be determined based on the American Medical Association Guides to the Evaluation of Permanent Impairment, Revised Third Edition (AMA Guides). Section 8-42-101(3)(a)(I), C.R.S. (1994 Cum.Supp.).
        The worker's authorized treating physician determines the impairment rating as a percentage of the whole person. If either party disputes the rating, an independent medical examiner may be selected by mutual agreement of the parties, or, if they are unable to agree, an IME physician will be appointed by the Director from a list of accredited physicians maintained by the division. The impairment rating of an agreed-upon IME physician is binding upon both parties and the Director. The rating of a division-appointed IME physician is also binding unless either party is able to overcome the rating by "clear and convincing" evidence. Section 8-42-107(8)(c), C.R.S. (1994 Cum.Supp.); see Salmon & Salazar, 1991 Update on Workers' Compensation Law, 20 Colo.Law. 2223 (November 1991).
II. Facts
        Here, the claimant was treated for his work injury by Dr. Andrew Plotkin, the employer's authorized treating physician. After four weeks of total temporary disability, Dr. Plotkin determined that claimant had reached maximum medical improvement, and he released him to return to work with no work restrictions. In addition, Dr. Plotkin stated in his final report to the division that claimant had not sustained any permanent impairment. However, according to the claimant, Dr. Plotkin verbally advised him that he should not return to his former work as a furniture mover.
        At the request of the Division of Labor, claimant was evaluated for vocational rehabilitation by Dr. Donald Harder. Dr. Harder concluded that claimant had sustained a permanent injury which prevented him from lifting more than 25 pounds or working in prolonged stooped positions.
        Because Drs. Plotkin and Harder had differing opinions as to his condition, claimant requested that Dr. Harder perform an independent medical exam under § 8-42-107(8)(c) to determine his permanent impairment, if any. The respondents, however, refused to accept Dr. Harder as the mutually approved medical examiner. The division therefore appointed Dr. Neil Rosenberg to conduct the IME.
        Dr. Rosenberg submitted a report finding that the claimant had "0% whole person impairment." Although Dr. Rosenberg noted that the claimant had ongoing "mild chronic low back pain," he said he could find "no abnormalities on neurologic examination to suggest a specific disorder," and he thus concluded that claimant had suffered no permanent impairment.
        The claimant disputed Dr. Rosenberg's rating and requested a hearing on the matter. At the hearing, he called Dr. Harder to testify on his behalf. Dr. Harder was qualified as an expert in orthopedic medicine, physical medicine, and rehabilitation. Like Dr. Rosenberg, he is a level II accredited physician under § 8-42-101(3.6)(a)(II), C.R.S. (1994 Cum.Supp.).
        Dr. Harder testified that the claimant has a 9% whole person impairment according to the AMA Guides. He explained that 5% of the impairment is based on a minimum of six months' medically documented pain and rigidity of the lumbar spine, and the remaining 4% impairment is due to a loss of flexion.
        Dr. Harder also opined that Dr. Rosenberg's impairment rating did not comply with the AMA Guides. He testified that Dr. Rosenberg deviated from the Guides by not utilizing an applicable table, and by not specifying whether he had used an inclinometer when measuring the claimant's lumbar range of motion, as recommended by the Guides. In addition, Dr. Harder noted that Dr. Rosenberg had crossed out his original numerical measurements of claimant's lumbar flexion on the measurement chart and had substituted a second measurement. Dr. Harder stated that the substituted figure was the number 60, which "happens to be the very number that is normal."

Page 414
        The ALJ concluded that it was "highly probable" that Dr. Rosenberg's impairment rating was incorrect. He found that claimant had met his burden of overcoming the IME rating with clear and convincing proof, and he expressly found that Dr. Harder and the claimant were credible witnesses. The ALJ credited Dr. Harder's 9% impairment rating and awarded the claimant $10,070 in benefits under § 8-42-107(8)(d), C.R.S. (1994 Cum.Supp.).
III. The Panel's Review
        On review to the Panel, the respondents argued that the ALJ erred as a matter of law in discrediting Dr. Rosenberg's impairment rating. Respondents argued that the impairment rating was "presumptively valid" because § 8-42-107(8)(c) creates a legal presumption that the IME physician arrived at the rating "in accordance with the AMA Guides." They also claimed that Dr. Harder's opinion discrediting Dr. Rosenberg's methodology was "mere conjecture," which did not justify the ALJ's order. The Panel rejected these arguments. The Panel said that it did not dispute that § 8-42-107(8)(c) establishes a presumption of regularity concerning the IME physician's impairment rating; however, citing Rockwell International v. Turnbull, 802 P.2d 1182 (Colo.App.1990), the Panel ruled that once a party disputing the rating has come forward with evidence to rebut the presumption of regularity, the issue becomes a question of fact for the ALJ's resolution.
        Moreover, in determining whether a party has overcome the presumption of regularity by clear and convincing evidence, the Panel stated that it cannot reweigh the evidence or make its own assessment of the quality of proof; rather, it determined it could review the record only to determine whether the ALJ's findings of fact were supported by substantial evidence. Because it found adequate support for the ALJ's determination, the Panel affirmed the order. This review followed.
IV. Standard of Review
        We first address the standard of review applicable to the ALJ's order.
        Clear and convincing evidence means evidence which is stronger than a mere "preponderance"; it is evidence that is highly probable and free from serious or substantial doubt. See CJI-Civ.3d 3:2 (1988); DiLeo v. Koltnow, 200 Colo. 119, 613 P.2d 318 1980). Therefore, the party challenging the IME rating under § 8-42-107(8)(c) must produce evidence which shows that it is "highly probable" the IME rating is incorrect.
        However, irrespective of whether the standard of proof at the administrative adjudicatory level of proceedings is clear and convincing, beyond a reasonable doubt, or merely a preponderance of the evidence, it is solely for the trier of fact to determine the persuasive effect of the evidence and whether the burden of proof has been satisfied. See Mehlbrandt v. Hall, 121 Colo. 165, 169, 213 P.2d 605 (1950); see also Eisnach v. Industrial Commission, 633 P.2d 502 (Colo.App.1981).
        Therefore, we agree with the Panel that the question whether a party has overcome the IME impairment rating by clear and convincing evidence is a question of fact for the ALJ's determination. Similarly, the question whether the IME physician has properly applied the AMA Guides in arriving at an impairment rating is a question of fact.
        We also agree with the Panel that the evidentiary standard of proof applied by the ALJ is not the same as the standard of review applied by the Panel and reviewing courts in determining the correctness of the ALJ's order. By statute, both the Panel and reviewing courts must apply the substantial evidence test in determining whether the evidence supports the ALJ's findings of fact. Sections 8-43-301(8) and 8-43-308, C.R.S. (1994 Cum.Supp.).
        Substantial evidence is that quantum of probative evidence which a rational fact-finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence. Monfort, Inc. v. Rangel, 867 P.2d 122 (Colo.App.1993).

Page 415
        In applying this test, we must view the evidence as a whole and in the light most favorable to the prevailing party. Industrial Commission v. Royal Indemnity Co., 124 Colo. 210, 236 P.2d 293 (1951). We must also defer to the ALJ's credibility determinations and his resolution of conflicts in the evidence, including the medical evidence. Rockwell International v. Turnbull; supra. If two equally plausible inferences may be drawn from the evidence, we may not substitute our judgment for that of the ALJ. Gelco Courier v. Industrial Commission, 702 P.2d 295 (Colo.App.1985).
        This, then, is the scope of our review, and it is exceedingly narrow. Martinez v. Regional Transportation District, 832 P.2d 1060 (Colo.App.1992).
V. The Merits of This Appeal
        In challenging the ALJ's findings, the respondents advance three arguments. They contend that even if Dr. Rosenberg did change the numerical measurements of claimant's lumbar flexion, it does not establish, clearly and convincingly, that his impairment rating was invalid. They also argue that the mere omission from Dr. Rosenberg's report of an affirmative statement that he used an inclinometer does not establish, by clear and convincing proof, that he did not use that instrument. Finally, they argue there was no basis in the evidence for the ALJ's finding that Dr. Rosenberg should have used Table 53 of the AMA Guides. We reject these contentions.
        Dr. Rosenberg's lumbar flexion measurements are found in the record; the original readings are heavily crossed over with ink, rendering the original figures illegible. Dr. Harder stated that these markings could be interpreted as alterations of previously recorded measurements, and he testified that the substituted measurements are in the normal range. Dr. Rosenberg did not testify. On these facts, the ALJ could reasonably infer that Dr. Rosenberg altered the original measurements in order to arrive at "normal" readings.
        The ALJ also found there was no "credible evidence" that Dr. Rosenberg had used an inclinometer as recommended by the AMA Guides. The ALJ found that when Dr. Harder used an inclinometer to measure the claimant's lumbar flexion, he found a measurable impairment. Conversely, Dr. Rosenberg's report does not state whether he had used an inclinometer, and his findings indicate no measurable loss or impairment. Under these circumstances, the ALJ could reasonably infer that, if Dr. Rosenberg had used an inclinometer, his rating also would have shown some degree of measurable impairment.
        We reject the argument that Dr. Harder's opinions were "conjectural." Dr. Harder examined the claimant on two separate occasions, and had taken into account the report and supporting documentation submitted by Dr. Rosenberg. Dr. Harder cited those portions of the AMA Guides which he considered appropriate and pointed to specific evidence justifying application of those sections in measuring the claimant's impairment. Thus, Dr. Harder's opinions were fully grounded in the evidence or plausible inferences drawn therefrom. See Dow Chemical Co. v. Industrial Claim Appeals Office, 843 P.2d 122 (Colo.App.1992); City of Aurora v. Vaughn, 824 P.2d 825 (Colo.App.1991).
        The ALJ found the foregoing evidence to be of "clear and convincing" quality, and we are bound by his assessment of its weight. Like the Panel, we conclude that the evidence is substantial and sufficient to support the ALJ's order.
        We have consistently ruled that conflicts in the medical evidence are for the ALJ's resolution. This fundamental principle of appellate review is not altered by the fact that the evidentiary standard of proof under § 8-42-107(8)(c) has been changed to "clear and convincing."
        The order is affirmed.
        METZGER and TAUBMAN, JJ., concur.