24CA0118 Santiagos v ICAO 07-18-24 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0118 Industrial Claim Appeals Office of the State of Colorado WC No. 5-148-399 Santiagos Chambers, LLC, and Fire Insurance Exchange, Petitioners, v. Industrial Claim Appeals Office of the State of Colorado and Roman Calderon Araiza, Respondents. ORDER AFFIRMED Division II Opinion by JUDGE SULLIVAN Fox and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Law Offices of Collin T. Welch, Joe M. Espinosa, Oklahoma City, Oklahoma, for Petitioners No Appearance for Respondent Industrial Claim Appeals Office Law Office of Miguel Martinez, PC, Joel Gonzalez-Bolivar, Denver, Colorado, for Respondent Roman Calderon Araiza 
 1 ¶ 1 In this workers’ compensation proceeding, Santiagos Chambers LLC (Santiagos) and its insurer, Fire Insurance Exchange (collectively, Respondents), seek review of the final order issued by the Industrial Claim Appeals Office (the Panel) awarding benefits to Roman Calderon Araiza (Calderon). We affirm. I. Background ¶ 2 Santiagos employed Calderon as a dishwasher beginning in June 2020. At that time he was seventy-one years old and worked one day per week. Calderon testified that on August 27, 2020, he was lifting a pot partially full of water and food debris from the floor to the sink and hurt his back in the process. He estimated that the weight of the filled pot was approximately fifty pounds. He continued working to the end of his shift, and notified the shift manager of the injury. ¶ 3 A few days later, Calderon went to his primary care provider at Clinica Family Health to seek treatment, but was told that they were too busy to treat him due to the COVID-19 pandemic. In September, he was treated at Clinica with pain relievers and injections. He filed a Workers’ Claim for Compensation on September 10, 2020. Respondents filed a notice of contest, and 
 2 Calderon requested a hearing before an administrative law judge (ALJ). ¶ 4 After the hearing, the ALJ issued findings of fact and conclusions of law determining that Calderon had suffered a work-
related injury in the course and scope of his employment. The ALJ ordered Respondents to pay all authorized, reasonably necessary, and related medical benefits, and temporary total disability benefits until terminated by law. The ALJ issued supplemental findings after Respondents petitioned for review under section 8-43-301(5), C.R.S. 2023. The supplemental findings expanded on certain areas of discussion but didn’t change the result. Respondents then appealed to the Panel, which rejected their arguments and affirmed the ALJ’s order. Respondents now appeal the Panel’s order. II. Standard of Review and Legal Principles ¶ 5 Our review of the Panel’s order is narrow. See Metro Moving & Storage Co. v. Gussert, 914 P.2d 411, 415 (Colo. App. 1995). We may set aside an order only upon the following grounds: That the findings of fact are not sufficient to permit appellate review; that conflicts in the evidence are not resolved in the record; that the findings of fact are not supported by the evidence; that the findings of fact do not 
 3 support the order; or that the award or denial of benefits is not supported by applicable law. § 8-43-308, C.R.S. 2023. ¶ 6 We must accept the ALJ’s findings of fact if they are supported by substantial evidence. Id. Substantial evidence is “that quantum of probative evidence which a rational fact-finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence.” Metro Moving & Storage, 914 P.2d at 414. In applying this test, “we must view the evidence as a whole and in the light most favorable to the prevailing party.” Id. We defer to the ALJ’s credibility determinations and resolution of conflicts in the evidence, including conflicts in the medical evidence. Id. Causation is generally a question of fact for the ALJ. Faulkner v. Indus. Claim Appeals Off., 12 P.3d 844, 846 (Colo. App. 2000). ¶ 7 Under the Workers’ Compensation Act of Colorado, an employee is entitled to compensation for an “injury or death . . . proximately caused by an injury or occupational disease arising out of and in the course of the employee’s employment.” § 8-41-
301(1)(c), C.R.S. 2023. The “in the course of” requirement refers to the time, place, and circumstances under which a work-related 
 4 injury occurs. Town of Kiowa v. Indus. Claim Appeals Off., 2024 COA 36, ¶ 13. Thus, an injury occurs in the course of employment when it takes place within the time and place limits of the employment relationship and during an activity connected with the employee’s job-related functions. Id. The term “arising out of” refers to the origin or cause of an injury. Id. A causal connection between the injury and the work conditions is required for the injury to arise out of employment. Id. An injury “arises out of” employment when it has its origin in an employee’s work-related functions and is sufficiently related to those functions to be considered part of the employee’s employment contract. Id. III. Analysis ¶ 8 On appeal, Respondents contend that: • this was an unwitnessed event and Calderon did not seek medical treatment until three weeks after the injury; • Calderon gave multiple versions of the mechanism of injury to his providers; • the ALJ abused her discretion in excusing Calderon’s inconsistent theories, basing it on poor translation; and 
 5 • the ALJ abused her discretion in finding the opinions of other doctors more credible than that of the Independent Medical Examiner, Dr. Lloyd Thurston. A. Proceedings Below ¶ 9 The ALJ heard testimony from Calderon, two Santiagos employees, and Dr. Thurston. Calderon, assisted by an interpreter, testified that he hurt his back “from lifting a ten-pound pot from the floor up to the sink that was three-quarters full of water and a meal that had been leftover, and meat that was to be thrown out.” When asked how much the pot with the contents weighed, Calderon responded that the total weight was approximately fifty pounds. He also testified that in addition to the pots, he often washed pans of various sizes. He further testified that he told his shift manager about the injury at the end of his shift on August 27, 2020, and sought medical treatment at Clinica, but was unable to immediately receive care due to the COVID-19 pandemic. Calderon testified that he was paid twelve dollars per hour, occasionally received tips, and worked between seven and eight hours per week. ¶ 10 Fabiola Morales, a Santiagos manager and owner, also testified with assistance from the interpreter. She was asked to 
 6 describe two photos: a photo of two pots used for chili and beans, and a photo of pans that sat on serving steamers and contained food. While she testified that the pans “had nothing to do with the dishwasher,” she also testified that the waiters would bring the pans to Calderon for washing. ¶ 11 Tobias Morales, also a Santiagos manager and owner, testified that the pots and pans would have been mostly empty when given to Calderon for washing. He did admit, however, that Calderon may have had a big pan to wash “if we’re super busy and they needed to make an extra batch of chili, he may have ended up with one of those.” He testified that twelve pans were on the steam table at one time and that “maybe thirty pans” would need to be cleaned. When shown Calderon’s timecards, he testified that dishwashers normally have everything done by 9:00 p.m., but sometimes Calderon wouldn’t finish until 10:00 or 10:30 p.m. Finally, he testified that tips during the COVID-19 period were “very minimal” and that at most Calderon would have received ten or twelve dollars in tips per day. ¶ 12 Dr. Thurston testified that, at Respondents’ request, he performed an Independent Medical Examination (IME) of Calderon 
 7 in August 2022. When asked by Respondents’ counsel why he stated in the IME that the “mechanism of injury” was not a “focus point of the report,” Dr. Thurston responded, “well, so I’ve seen people that have herniated a disk or injured their back sneezing. So to me, it’s not particularly important whether he’s lifting one pound or fifty pounds.” Dr. Thurston testified that he reviewed Calderon’s MRI, completed two years after the August 2020 injury, which showed no disc herniations. Dr. Thurston opined that Calderon’s account of how hard he worked wasn’t accurate because he didn’t work many days. Thurston opined that Calderon’s most probable injury from lifting the pot was a myofascial strain that would have resolved within four to six weeks. ¶ 13 When asked on cross-examination whether, due to his age, Calderon could have been injured even if he lifted an empty pot, Thurston responded, “oh, yes.” But when asked if there was a “difference in recovery between an older person and a younger person, Dr. Thurston responded, “Older people tend to recover more slowly, but they are usually more experienced with their bodies. They’re a little smarter about how they recover. So I think it is 
 8 about a wash.” Due to time constraints, the rest of Dr. Thurston’s testimony was concluded by deposition. ¶ 14 Evidence in the record before the ALJ included many pages of medical records from Calderon’s treating providers at Clinica. Calderon was first seen in person by a nurse practitioner, Jennifer Manchester, on September 18, 2020. At that visit, he complained of back pain radiating to both legs, and numbness affecting both of his lower extremities. His physical exam showed tenderness to palpation to the lumbar spine. Manchester diagnosed Calderon with lumbar pain and radiculopathy affecting lower extremities, and referred him for an orthopedic consultation. She restricted Calderon from work from August 27, 2020, until October 2, 2020. ¶ 15 Calderon continued medical treatment for his injury at Clinica, and his off-work status continued. On October 7, 2020, Calderon returned to Clinica for a follow-up visit with Dr. Upasana Mohapatra, who reviewed thoracic X-rays and noted no fractures, but expressed concern for decreased sensation in dermatomes from L4-S1. She diagnosed Calderon with acute midline thoracic back pain and leg numbness; she ordered a lumbar and thoracic MRI. 
 9 ¶ 16 Calderon continued to receive pain-management care at Clinica, including injections and medication. He also saw a Clinica Behavioral Health Specialist who diagnosed him with depression. In April 2021, at the request of Calderon’s counsel, Dr. Gregory Reichardt performed an IME. Dr. Reichhardt noted tenderness to palpation that was most pronounced at the L1 to L3 level. He also reported that Calderon had moderate lumbar paraspinal muscle spasms from L1 to L5, and straight leg raising was positive for back and leg pain. Dr. Reichhardt opined that based on the exam, the history provided by Calderon, and his medical records, Calderon’s thoracolumbar pain and lower extremity symptoms were related to his August 27, 2020, work-related injury. ¶ 17 After hearing all the testimony and reviewing the evidence in the record, the ALJ found that Calderon had proven that he was injured in the course and scope of his employment with Santiagos on August 27, 2020, when he lifted a pot with water and food debris off the floor and strained his thoracolumbar spine. The ALJ further found that Calderon subsequently developed lower extremity radicular symptoms and depression related to his chronic low back and radicular pain and numbness, and that those injuries were 
 10 compensable. On appeal to the Panel, Respondents made many of the same arguments they now make to this Court. The Panel rejected those contentions and affirmed the ALJ’s order. B. Discussion ¶ 18 After thoroughly reviewing the record, we agree with the Panel that substantial evidence supports the ALJ’s determination. Respondents argue that “this was an unwitnessed event and Calderon did not seek medical treatment until three weeks after the injury.” But our review of the record supports the ALJ’s finding that Calderon sought treatment within a few days of his injury, not three weeks later. The delay in his treatment was attributed to the COVID-19 pandemic, and we find substantial evidence supports that conclusion. While Respondents are correct that the injury was apparently “unwitnessed,” that fact does not, in itself, render the injury not compensable. See Town of Kiowa, ¶ 18 (holding that a claimant’s testimony as to an unwitnessed accident, combined with medical evidence, can constitute credible evidence of the time, place and date of the injury). ¶ 19 We also reject Respondents’ arguments that Calderon gave multiple versions of the mechanism of injury to his providers and 
 11 that the ALJ abused her discretion in excusing the inconsistent theories, basing it on poor translation. The ALJ recognized and addressed the inconsistences in the evidence and in Calderon’s account of the events leading to the work accident: Respondents argue that [Calderon’s] version of events was illogical and there was no reason for anyone to take the empty pot, fill it with water and then place it on the ground to be cleaned as it did not make sense. However, this ALJ concludes that it makes a lot of sense. It is clear that dirty pans do get placed on the floor waiting to be washed as seen in the photos taken by Respondents. It is evident from the photos that there is a limited area to place dirty items as the space was needed to take items from the sink onto the small counter in order to wash them. [Calderon’s] testimony that the pot he lifted was full of water and food debris was credible. A pot that has been used to cook may have food stuck and water was placed in the pot in order to assist with cleaning the pot later. And while [Calderon’s] assessment of weight may be imperfect, it does not change the fact that [he] lifted items that he considered heavy, and at one of those events, injured his thoracolumbar spine. This is supported by the records from Clinica Family Health and Dr. Reichhardt as well as [by Calderon’s] testimony, which are found credible. ¶ 20 Despite the ALJ’s resolution of the conflicting evidence, the Respondents ask us to reweigh the evidence and make contrary 
 12 findings to those made by the ALJ. However, like the Panel, we have no authority to do so unless the testimony believed by the ALJ was rebutted by such hard, certain evidence that it would be error as a matter of law to credit it. See Halliburton Servs. v. Miller, 720 P.2d 571, 578 (Colo. 1986). That is not the case here. While Respondents contend the ALJ should have given more weight to Dr. Thurston’s testimony, we note, as did the ALJ, that Dr. Thurston testified that Calderon could have been injured even if the pot was empty. Thus, Respondents’ arguments about the weight of the pot don’t persuade us that the ALJ committed reversible error. ¶ 21 Next, the Respondents argue that the ALJ erred in crediting Dr. Reichhardt’s IME and opinions since they were based on an incorrect mechanism of injury that Calderon reported. But in Dr. Reichhardt’s IME, he states that the mechanism of injury reported was “lifting a pot at work on August 27, 2020, while working as a dishwasher.” While Respondents argue about whether Calderon washed both pots and pans, how many pans he washed, and whether they were empty or full, those factors don’t appear to have influenced Dr. Reichhardt’s assessment of the mechanism of injury. 
 13 ¶ 22 To the extent that Dr. Reichhart may have considered Calderon’s statements that he worked hard and washed many pots and pans, we don’t view such statements as “misconceived information” as Respondents argue. The transcript of the hearing indicates that, on cross-examination, Calderon was asked about Dr. Reichhardt’s notes concerning the injury, which stated, “[Calderon] notes that his job involves lifting pans, washing them, and putting them in overhead cabinets. He notes that the pans weigh up to fifteen pounds and he typically washes 100 pans per eight-hour shift.” When asked if that was accurate, Calderon testified, “we have, for the public, there are some eight to ten large dishes that we also have to wash at the end of the shift. And that’s why I had said that there was around 100. Even the disposable containers, there was about ten to fifteen to twenty that they would have me wash those again.” ¶ 23 Respondents argue that the ALJ erred in excusing Calderon’s allegedly inconsistent theories of injury, “basing it on poor translation.” We reject this argument. In her order, the ALJ stated, “This ALJ does not consider [Calderon’s] being a poor historian, which was documented in various records, as being untruthful, but 
 14 a result of multiple factors, including use of interpreters instead of direct communication with medical providers, his clear lack of education demonstrated by [his] word usage and patterns of speech at the hearing, his demeanor and difficulty understanding simple questions, in addition to his age, memory, and documented depression.” ¶ 24 The ALJ is the sole finder of fact, and the sole determiner of the credibility of witnesses. Life Care Ctrs. of Am. v. Indus. Claim Appeals Off., 2024 COA 47, ¶ 36. The weight and sufficiency of the evidence and the probative effect of evidence are matters solely within the ALJ’s province. Id. Like the Panel, we won’t disturb the ALJ’s credibility determinations or the weight she gave to the testimony. ¶ 25 Finally, Respondents argue that Calderon misrepresented the number of days and hours he worked. But as the ALJ noted, while the clocked-in time shows seven or fewer hours worked per day, this doesn’t count the time that Calderon was at the job site, including his breaks, which was consistent with his testimony that he was at work for seven to eight hours per day. Further, the parties stipulated during the hearing that Calderon’s Average 
 15 Weekly Wage was $103.85. The transcript reflects that Respondents’ counsel stated: I guess what I came up with, Your Honor, just as far as straight hours, was $88.55, just based off the time that he worked until his last day, which was about 75 days, and divided that into weeks by the -- a gross total. But that did not include tips. As Mr. Morales just testified to, it was about $10 to $15. [Calderon’s counsel] I believe, at the beginning of the hearing, suggested $103. I guess 88 plus 15 is 103.· So if . . . the number’s 103, we can agree to that.” ¶ 26 This calculation appears consistent with working a seven- or eight-hour day, one day per week, at twelve dollars per hour, plus a minimal amount of tips. Accordingly, we reject Respondents’ argument regarding Calderon’s alleged misrepresentations about the amount of time he worked. IV. Disposition ¶ 27 We affirm the Panel’s order. JUDGE FOX and JUDGE GROVE concur.