24CA0336 United Continental v ICAO 11-27-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0336
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-198-416

---

United Continental Holdings, Inc.,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Tracy Slusher,

Respondents.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE BERGER*
Lipinsky and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

---

Pollart Miller LLC, Brad J. Miller, Greenwood Village, Colorado, for Petitioner

No appearance for Respondent Industrial Claim Appeals Office

Franklin D. Azar & Associates, P.C., Robert W. Turner, Aurora, Colorado, for Respondent Tracy Slusher

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     United Continental Holdings, Inc. (employer) seeks review of a final order of the Industrial Claim Appeals Office (Panel).  In the order, the Panel upheld the findings and conclusion of the administrative law judge (ALJ) that claimant, Tracy Slusher, suffered a compensable work-related injury requiring employer to pay all reasonably necessary and related medical benefits and temporary total disability benefits.  We affirm the Panel's order.

## I.     Relevant Facts and Procedural History

¶ 2     Slusher worked for employer as a customer service agent for fourteen years.  Although her job duties changed over time, at the time of her claimed injury, she was charged with meeting aircraft at the gate and assisting passengers as they disembarked.  She was required at times to put in place a mobile swing gate — also called a mobile bridge adapter — that allowed the passengers to disembark from the plane.

¶ 3     Slusher testified that, on September 26, 2021, she attempted to move a heavy mobile bridge adapter but it got stuck.  She pulled on the bridge adapter in an attempt to dislodge it and felt a pop in

1

her right shoulder.  She felt pain but continued to work and completed her shift.

¶ 4     During her ride home and after she arrived home, the pain in Slusher's shoulder worsened to the extent that she visited a hospital emergency room that night.  Her shoulder was x-rayed at the hospital.  She went to Panorama orthopedic clinic the next day for treatment.  The doctors at Panorama ordered a magnetic resonance imaging (MRI) test.  The x-rays and MRI test revealed an accumulation of calcium in Slusher's shoulder and a small tear in her rotator cuff.

¶ 5     The doctors were concerned that the calcium deposits indicated cancer, so they referred Slusher to an oncologist.  After the oncologist determined that the calcium deposits were not cancerous, Slusher began treatment for her shoulder, which largely consisted of physical therapy.  Slusher's treatment team initially considered surgery, but later determined it was not indicated.  At the time of the workers' compensation hearing, Slusher had not returned to work because of the work restrictions that her doctors had imposed.

¶ 6     At Slusher's request, Dr. Sander Orent conducted an independent medical examination (IME) in January 2023. concluded that Slusher had sustained an industrial injury. He also opined that she was not at maximum medical improvement, had ongoing symptoms, and required substantial work restrictions that prevented her from performing her job duties.

¶ 7     At employer's request, Dr. Lawrence Lesnak conducted a second IME in June 2023. He concluded that, although there may have been some type of "incident" on September 26, 2021, no medical evidence supported a finding that Slusher sustained an injury as a result of that incident. Dr. Lesnak noted that Slusher had several pre-existing conditions and had not provided a full medical history to her treating physicians or to him. For these reasons, he concluded that further medical care, impairment rating assessment, or any type of work restrictions were "completely not applicable whatsoever."

¶ 8     Slusher was the only witness who testified at the hearing. The reports of the treating physicians, as well as those of the IME physicians, were admitted into evidence. Through

cross-examination, employer vigorously questioned the existence and extent of Slusher's injuries because of her numerous pre-existing medical conditions, at least some of which she had not disclosed to the IME physicians.

¶ 9    Slusher admitted that, before September 26, 2021, she had been diagnosed with calcific tendinitis and previously sought treatment for a dull, aching pain in her right shoulder. She also admitted that she had previously been diagnosed with Hashimoto's disease, fibromyalgia, and scleroderma. But she testified, repeatedly and emphatically, that she had never before had the type of pain that she experienced after the September 26, 2021, incident.

¶ 10    In a written order, the ALJ found that Slusher was injured on the job on September 26, 2021. The ALJ acknowledged Slusher's pre-existing conditions, but found no persuasive or substantial evidence that Slusher was unable to perform her job duties because of these conditions before the date of the incident. The ALJ specifically found that the September 26, 2021, incident aggravated Slusher's pre-existing condition and caused a new injury in the form of a small rotator cuff tear.

¶ 11    The ALJ addressed and rejected Dr. Lesnak's opinion that Slusher had not sustained an injury on September 26, 2021, finding that the opinion was neither credible nor persuasive. Instead, the ALJ relied on Dr. Orent's opinion that Slusher had sustained a work injury on September 26, 2021.

¶ 12    Based on all the evidence presented, the ALJ determined that Slusher had proven by a preponderance of the evidence that she suffered a compensable work-related injury to her right shoulder on September 26, 2021. The ALJ ordered employer to pay all authorized, reasonably necessary and related medical benefits, as well as temporary total disability benefits, beginning on September 27, 2021, and applicable interest.

¶ 13    Employer appealed to the Panel. In a lengthy order, the Panel affirmed the ALJ's decision. The Panel concluded that substantial, albeit conflicting, evidence supported the ALJ's findings of fact and further concluded that the Panel had no authority to overturn the ALJ's factual findings.

II. Analysis

¶ 14 Employer contends that we should set aside the Panel's order because (1) the evidence does not support a determination that Slusher sustained "any type of injury whatsoever" on September 26, 2021, and (2) the ALJ failed to address employer's argument that, even if Slusher was injured on that date, her current, ongoing condition was not work-related. We reject these contentions.

## A. Standard of Review and Legal Principles

¶ 15 Our review of the Panel's order is narrow. *See Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 415 (Colo. App. 1995). We may set aside an order only on the following grounds:

> [t]hat the findings of fact are not sufficient to permit appellate review; that conflicts in the evidence are not resolved in the record; that the findings of fact are not supported by the evidence; that the findings of fact do not support the order; or that the award or denial of benefits is not supported by applicable law.

§ 8-43-308, C.R.S. 2024.

¶ 16 We must accept the ALJ's findings of fact if they are supported by substantial evidence. *Id.* Substantial evidence is "that quantum of probative evidence which a rational fact-finder would accept as adequate to support a conclusion, without regard to the existence of

6

conflicting evidence." *Metro Moving & Storage*, 914 P.2d at 414. When applying this test, "we must view the evidence as a whole and in the light most favorable to the prevailing party." *Id.* We defer to the ALJ's credibility determinations and resolution of conflicts in the evidence, including conflicts in the medical evidence. *Id.* Causation is generally a question of fact for the ALJ. *Faulkner v. Indus. Claim Appeals Off.*, 12 P.3d 844, 846 (Colo. App. 2000).

¶ 17 Under the Workers' Compensation Act of Colorado, an employee is entitled to compensation for an "injury or death . . . proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment." § 8-41-301(1)(c), C.R.S. 2024. The "in the course of" requirement refers to the time, place, and circumstances under which a work-related injury occurs. *Town of Kiowa v. Indus. Claim Appeals Off.*, 2024 COA 36, ¶ 13. Thus, an injury occurs in the course of employment when it takes place within the time and place limits of the employment relationship and during an activity connected with the employee's job-related functions. *Id.*

¶ 18    "When a pre-existing condition is aggravated by an employee's work, the resulting disability is a compensable" work injury. *Subsequent Injury Fund v. Thompson*, 793 P.2d 576, 579 (Colo. 1990); *see also Seifried v. Indus. Comm'n*, 736 P.2d 1262, 1263 (Colo. App. 1986) ("[I]f a disability were 95% attributable to a pre-existing, but stable, condition and 5% attributable to an occupational injury, the resulting disability is still compensable if the injury has caused the dormant condition to become disabling.").

### B.    Slusher's Injury Was Work-Related

#### 1.    Pre-Existing Conditions

¶ 19    Employer argues that Slusher's inability to work stemmed from her previous diagnosis of calcific tendinitis and that she repeatedly misrepresented her medical history to the IME examiners and her own treating physicians.

¶ 20    The ALJ acknowledged Slusher's pre-existing shoulder condition — the calcific tendinitis for which she received anti-inflammatory medication in 2019.  However, the ALJ credited Slusher's testimony that, despite her diagnosis of calcific tendinitis, she was able to perform her job duties for years before the work injury at issue.  Slusher testified that the pain in her shoulder after

8

the incident was a "stabbing sharp pain" rather than the dull achiness she experienced with the calcific tendinitis. In sum, the ALJ found, with record support, that before September 26, 2021, Slusher worked full time as a customer service agent, opening aircraft doors and moving heavy bridges and bridge adapters, without significant difficulty, despite her pre-existing medical conditions. Based on this evidence, which the ALJ credited, the ALJ found that the September 26, 2021, injury aggravated her pre-existing condition and caused a new injury in the form of a small rotator cuff tear.

¶ 21    Employer asserts that this finding is not supported by the record because Slusher's treating physician "made it clear" that her pain was from the inflammation caused by the pre-existing calcification, not from the small rotator cuff tear. To reach this conclusion, employer points to medical records stating that "inflammation from the calcification around the rotator cuff is the problem" and her treating physician's conclusion that Slusher was "suffering from an unusual form of calcific tendinitis that made its way into her bone." The ALJ acknowledged those records, but

9

found, with record support, that other medical records indicated a small tear of the rotator cuff. The ALJ further noted that Slusher's x-rays showed swelling immediately following the incident but that it had nearly resolved by April of 2022, supporting the determination that Slusher sustained an injury on September 26, 2021. *See Metro Moving & Storage*, 914 P.2d at 415 (we must "defer to the ALJ's . . . resolution of conflicts in the evidence, including the medical evidence").

¶ 22    In her order, the ALJ did not specifically address employer's assertions that Slusher misrepresented her medical history to the treating providers and the IME physicians. However, in the order, the ALJ thoroughly reviewed and summarized the medical records, reports, and Slusher's testimony, which contain information about her pre-existing conditions. Moreover, the ALJ found that, other than the diagnosis related to calcific tendinitis in her right shoulder, Slusher's medical records from before 2016 were not relevant to whether Slusher was entitled to workers' compensation benefits for the injuries resulting from the September 26, 2021, incident.

¶ 23    Employer vigorously asserts that Dr. Lesnak's opinion was based on a proper and accurate medical history and that Dr. Orent's report lacked credibility because of Slusher's failure to provide him with an accurate history.

¶ 24    But the ALJ found to the contrary.  She found that Dr. Lesnak's report concentrated on records going back years showing that Slusher had chronic health problems, which the ALJ did not find relevant to the injury that occurred on September 26, 2021. The ALJ specifically found that neither Dr. Lesnak's report nor his opinions were credible or persuasive.  The ALJ, however, found that Dr. Orent's opinions were credible and persuasive.

¶ 25    Exercising her authority as the factfinder, the ALJ rejected the testimony and evidence presented at the hearing inconsistent with her findings in the order because that inconsistent testimony and evidence was neither credible nor persuasive.

## 2.    Potential Prior Injury

¶ 26    Employer also argues that Slusher had a prior injury to her rotator cuff and reported chronic shoulder problems because of this previous injury just six months before the September 26, 2021,

11

incident.  We acknowledge that a medical record from Slusher's primary care physician dated March 2021 notes an "injury of right shoulder" and "old work injury, not on work comp anymore."  But when asked about this record at the hearing, Slusher testified that she had seen her primary care physician for a routine physical in March 2021, the notation was a mistake, and she had not previously submitted a workers' compensation claim.  The ALJ made a factual finding that any reference to an "old work injury" was incorrect and not credible.

¶ 27     Similarly, employer asserts that Slusher reported a "prior rotator cuff tear" when she sought treatment at the emergency room.  Based at least in part on Slusher's testimony, the ALJ also found this notation in the medical record to be a mistake and not credible.  We cannot second-guess these credibility determinations, the ALJ's assessment of the persuasive value of the evidence, or the resolution of conflicting evidence.  *See Metro Moving & Storage*, 914 P.2d at 414-15.

## C.    Slusher's Ongoing Condition Was Work-Related

¶ 28    Employer also argues that the ALJ erred as a matter of law because she did not address its argument that, even if a compensable injury occurred, the ongoing condition was not work-related and an award of benefits was not appropriate.  We disagree.

¶ 29    The ALJ's order addresses whether Slusher's ongoing disability was due to the on-the-job injury as follows:

> [P]ersuasive evidence shows [Slusher] was disabled by the September 26, 2021 injury because she could not use her upper right extremity. . . .  Later, . . . her authorized treating physician . . . kept [Slusher] off of work.  [Slusher] credibly testified that with the inflammation from the calcific tendinitis she was able to lift her arm overhead for years while working for employer opening aircraft doors and moving the [mobile bridge adapter], as well as loading bags and other tasks.  She could not perform all of these tasks after the September 26, 2021 injury.  It was the injury to her rotator cuff and the aggravation of her calcific tendinitis that caused her to be unable to return to work for [e]mployer at her same job duties.

¶ 30    The ALJ proceeded to address whether Slusher's continuing inability to perform the essential functions of her job was related to the September 26, 2021, incident:

13

> [Slusher] testified that she had not yet been placed at maximum medical improvement . . . , and nothing in the records and evidence submitted at the time of the hearing were persuasive otherwise. Nor had [e]mployer offered her any modified job duties. . . . [Slusher] was unable to return to work beginning on September 27, 2021 . . . and continued to be unable to perform her job.

¶ 31     Employer asserts that the ALJ did not address whether Slusher's continuing inability to work was due to the on-the-job injury, but employer does not explain why the above findings were insufficient in that respect.

¶ 32     Rather, employer argues that Dr. Lesnak did not believe Slusher had any disability that would entitle her to benefits. Employer further asserts that Dr. Orent reviewed the treating physician's notes and determined that he had "released claimant to full duty work on the third week of February 2022." Once again, these arguments are attacks on the sufficiency of the evidence supporting the ALJ's findings, which we have already rejected.

¶ 33     It makes no difference whether evidence in the record would have supported a decision other than the one the ALJ reached. The only question properly before us is whether sufficient evidence in

14

the record supported the findings and conclusions that the ALJ reached.

¶ 34     For the reasons articulated above, we conclude, as did the Panel, that sufficient evidence supported the ALJ's factual findings.

## III.    Disposition

¶ 35     The Panel's order is affirmed.

JUDGE LIPINSKY and JUDGE SULLIVAN concur.